Jenner, J.
Thomas Griffith, Charles M. Gattrell and William Price were engaged in the banking business in the city of Zanesville, under the firm-name of C. C. Russell & Co. Griffith died on the 24th of July, 1884, and the surviving partners continued the business under the same firm-name until August 28th, 1884, when being insolvent, the business was discontinued, and a dividend of 30 per cent, paid to creditors.
The plaintiff, Terrence Cain, was a depositor with the firm before and after the death of Griffith, and until the bank closed its doors by reason of insolvency. His transactions-with the bank were kept as one continuous open account, from the commencement until the close, as if the death of Griffith had made no change in the firm.
At the time of Griffith’s death, there was a balance due Cain of $911.27. The deposits made after the death of Griffith until the bank ceased to do business increased the credit side of plaintiff’s account to $1,662.68. The amount checked.out after the death of the partner, together with the dividend of 30 per cent., were more than sufficient to satisfy the claim of $911.27. But if the dividend and amount drawn out by plaintiff on checks were applied to the payment of the $911.27, it left a balance due him of $526.
A claim for this balance was presented to the administrator of the estate of Griffith, which was rejected, and is now the *613 foundation of the cause of action in plaintiff’s amended petition.
It may be assumed that the firm of C. C. Russell & Co. was insolvent from May 1, 1884, until the death of Griffith, and thereafter until the bank was closed; and that this fact was unknown to plaintiff until the surviving partners discontinued business.
The errors assigned are :
1. In sustaining the motion of defendant to strike from the amended petition certain averments.
2. In excluding evidence offered by plaintiff.
3. In the charge to the jury.
4. In overruling the motion for a new trial.
A motion was made by defendant to strike from the amended petition, the averments as to deposits made by plaintiff with Gattrell & Price after the death of Griffith ; also as to the manner in which the business was conducted by Gattrell & Price; that the funds received by the surviving partners were mingled with funds received by the firm before the death of Griffith; and that the firm had been insolvent for more than a year before his death, which was unknown to plaintiff; that after Griffith’s death the business had been conducted by the surviving partners as it had been prior thereto, with the knowledge and consent of his executrix, his widow and heirs. This motion was sustained, and the ruling of the court in sustaining it is assigned for error.
It is conceded that the death of Griffith dissolved the firm of whieh he was a member. The duty of the surviving partners was clear. They could not by any act of theirs bind the estate of the deceased partner. In the absence of authority, by contract or will, to carry on the business after the death of Griffith, neither the executrix, the widow, nor heirs, could confer such authority on the surviving partners. The manner in which Gattrell & Price conducted the business with the public, could not bind Griffith’s estate. We think this class of averments were properly stricken from the petition.
But the transactions of plaintiff before and after th.e death of Griffith, constituting but one continuous open account — all the items of it, the credits as well as the debits — were proper evidence to be submitted to the jury. The intention of the *614 debtor or creditor was the essential fact to be ascertained, and one method of arriving at it, was by an examination of the entire dealings of the parties. This being so, an averment in the petition as to the deposits made at the dates stated, was a material averment, and should not have been stricken out. And if the plaintiff was prejudiced by the action of the court, the cause should be reversed. But upon an examination of the entire record, we do not think the plaintiff was prejudiced by striking out this averment, for the reason that it appears that the entire transaction between the parties was submitted to the jury, including all the deposits made by the plaintiff.
After the motion was sustained, an issue was made up, the case tried to a jury, and a verdict returned for the defendant. During the trial certain questions were propounded by the plaintiff to one of his witnesses, and upon objection, the witness was not allowed to answer, and this ruling is assigned for error. The record does not show what was proposed to be proved in answer to the questions, and this is held to be necessary before error can be assigned. The answers, if they had been given, may have been unfavorable to the plaintiff, so we are unable to say that there was error in excluding*the evidence.
The important question in the case is made on the exception to the charge of the court. The portion of the charge raising the question was as follows : .
“The general rule of the law is, that where there is one single open current account between two parties, every payment not shown to have been made in discharge of some particular item standing to the debit of the person paying, at the time of payment, is imputed to the earliest item standing to the debit of the payer at the time of payment.”
It is’contended by counsel for plaintiff, that if the rule in Clayton’s case is the law in Ohio, yet the facts in that case and the one under consideration are different.in this, that the firm of C. C. Russel & Co., was insolvent'before as well as after the death of Griffith, and that an injustice results to plaintiff by the application of this rule. It is undoubtedly true that decisions of tribunals, however oidor eminent, should not be followedkby our courts, when not founded on reason, or *615 when the reason of the rule no longer exists. But it is also a well settled principle of jurisprudence, that rules of law long settled and generally accepted, should not be disturbed unless their application to a given case would be inequitable.
The rule in Clayton’s case has not been disturbed for over seventy years. It has frequently been under consideration by the courts, and has been followed with great unanimity. See 1 Merivale’s Eng. Ch. R. 572 ; 1 Lindley on Partnership, 229 (Ed. 1888), and cases there cited.
There is quite a similarity in the facts of the Clayton case and this case. Clayton was a customer of a banking firm consisting of five partners. Devaynes, a partner, died, and the banking business was continued by the surviving partners under the old firm. There was a balance of 1713£ due Clayton from the bank at the time of Devaynes’ death. He continued tó do business with the bank until its failure. His account was a continuous account, no change having been made by reason of the death of Devaynes. At the time of the failure of the bank, there was a large balance due Clayton, but he had received from the bank, after the death of the partner, an amount exceeding the 1713£, which had been charged to his account without any indication as to the fqnd from which payment was made. After the failure of the bank, Clayton sought to charge the estate of Devajmes with the balance due at his death. It was decided that Clayton had no claim against the estate. The rule as announced, extinguished the 1713£. “That when there is one single open current account between two parties, every payment which can not be shown to have been made in discharge of some particular item, is imputed to the earliest item standing to the debit of the payer at the time of payment.” It will be seen that the court charged this rule almost literally.
How is this presumption affected by 'the insolvency of C. C. Russell & Co. before the death of Griffith ?
When Griffith died, the firm of which he had been a member was dissolved. It was then the duty of the surviving partners to close the business of the late firm, and if it was insolvent, make an equitable distribution of the assets to the creditors. Cain knew of the death of Griffith, and was pre *616 sumed to know the duty of the surviving partners. He chose to continue doing business with the bank, as if the death of Griffith had not occurred. Neither the surviving partners, nor Cain indicated out of whatfunds payment was tobe made, but after the insolvency of the bank was announced, then the presumption as to the application of payments is sought to be avoided, that could have had no application had Cain not been willing to trust the surviving partners. If Cain had directed Gattrell & Price to open a new account with him, and place to his credit the balance due him from the old firm, it would not be contended that the estate of Griffith would be liable, because it became known a short time thereafter that Gattrell & Price were insolvent. In legal effect, is the result not the same in this case; and if so, how does any injustice result ? The estate of Griffith must not suffer from the business transactions of Cain with Gattrell & Price.
W. H. Ball and E. E. Evans, for plaintiff in error.
M. M. Granger, for defendant in error.
We do not think the insolvency of the firm of which Griffith was a member, changes the rule of presumption as to the application of payments to the items in a continuous open account.
In Gaston et al. v. Barney, 11 Ohio St., Scott, C. J., announcing the opinion of the court, on p. 511, says : “Thus, when a payment is made to apply on an open running account between the parties, without any designation of the items on which it is intended to apply, the law will, upon equitable principles, infer the debtor’s intention to appropriate the payment in discharge of the earliest items, in the order of their dates.” While this question was not directly involved in the Gaston case, it is a recognition of the rule of the common law, as distinguished from the rule of the civil law, which makes the application upon the presumed intention of the debtor, to the debt or item of debt most beneficial to the debtor.
We conclude that there is no error in the charge of the court, and none in the record to the prejudice of the plaintiff in error.
The judgment is affirmed and remanded for execution.